USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/08/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                    Plaintiff,

          - against -

JOSHUA MIRABAL,

                    Defendant.

**16 Cr. 272 (VM)**

JOSHUA MIRABAL,

                    Petitioner,

          - against -

UNITED STATES OF AMERICA,

                    Respondent.

**22 Civ. 3377 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

On June 16, 2022, Defendant/Petitioner Joshua Mirabal ("Mirabal") filed a pro se motion seeking post-conviction relief and to be resentenced under 28 U.S.C. Section 2255(a) ("Section 2255"). (See "Habeas Motion," Civ. Dkt. No. 7; Cr. Dkt. No. 629.) Mirabal also filed a pro se motion seeking compassionate release or a reduction in sentence under 18 U.S.C. Section 3582(c)(1)(A) ("Section 3582"). (See "Release Motion," Cr. Dkt. No. 651.) For the reasons stated herein, both Mirabal's Habeas Motion and Release Motion are **DENIED.**

I.    **BACKGROUND**

Mirabal was arrested in March 2017 following a superseding indictment charging him with conspiracy to distribute narcotics, in violation of 21 U.S.C. Sections 846 and 841(b)(1)(A), and use of a firearm in connection with a narcotics crime for participating in the murder of Philip Diaz ("Diaz"), in violation of 18 U.S.C. Section 924(j).

On September 21, 2018, Mirabal entered into a plea agreement with the Government in which he pled guilty to Counts One and Two of a third superseding information after waiving indictment. Those two counts were one count of distributing narcotics, in violation of 21 U.S.C. Sections 841(a)(1) and (b)(1)(C), as well as one count of conspiracy to distribute other narcotics in violation of 18 U.S.C. Section 371. As part of the plea agreement, Mirabal admitted that he participated in the July 30, 2005 murder of Diaz in furtherance of the narcotics conspiracy. The plea agreement limited Mirabal's possible sentence to a statutory maximum of 25 years' imprisonment, reducing Mirabal's exposure from the possible life sentence that he could have faced.

On January 17, 2020, Mirabal was sentenced. The Court found that because the murder of Diaz would constitute first-degree murder under 18 U.S.C. Section 1111, the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") base

offense level was determined by Guidelines Section 2A1.1(a), setting the base offense level at 43. The Court determined that Mirabal's timely guilty plea reduced his offense level by three levels to 40. The Court also found that Mirabal's criminal history category was Category IV, and that the Guidelines range applicable to the offense level and criminal history category would have been 360 months to life imprisonment. The Court also considered the relevant factors under 18 U.S.C. Section 3553(a) including the "premeditated attempted murder" that resulted in the death of Diaz and Mirabal's continued violence and participation in narcotics trafficking until he was arrested in 2017. Because Mirabal's plea agreement allowed him to plead to charges with a maximum penalty of 25 years, the Court found that the applicable guidelines range at sentencing was 300 months' imprisonment. After considering both parties' arguments, the relevant sentencing factors, and the Guidelines, the Court imposed on Mirabal a total sentence of 300 months to be followed by three-years supervised release.[1]

Mirabal appealed on January 28, 2020 (see Cr. Dkt. No. 577), but the Second Circuit dismissed his appeal as barred by the appeal waiver in Mirabal's plea agreement. The Second

---

[1] Mirabal's 300-month sentence was imposed as 240 months on Count 1 and 60 months on Count 2, to run consecutively. (See Cr. Dkt. No. 574.)

Circuit issued a mandate on September 21, 2021, affirming the Court's judgment of conviction. (See Cr. Dkt. No. 614.)

Mirabal now moves for post-conviction relief under Section 2255 claiming ineffective assistance of counsel, as well as for compassionate release under Section 3582 due to a need to care for his ailing mother and because he fears an increased risk of complications from COVID-19, should he contract it again while in custody. (See generally Habeas Motion; Release Motion.) The Government opposes both motions.[2] (See "Habeas Opposition," Civ. Dkt. No. 14; "Release Opposition," Cr. Dkt. No. 660.) Mirabal also filed a reply to the Government's opposition to his Habeas Motion. (See "Reply," Civ. Dkt. No. 20.)

In his Habeas Motion, Mirabal argues that he received ineffective assistance of counsel.[3] Mirabal asserts that his

---

[2] The Government's response to Mirabal's motion for habeas relief was filed well beyond the Court's deadline. Due to the Government's delay, Mirabal submitted letters arguing that the Government's failure to timely respond waived any arguments in opposition. (See Civ. Dkt. No. 16.) Despite their delay, the Government did eventually respond, rendering Mirabal's request moot. But, either way, even if the Government had not responded, the Court has the authority to review and deny a Section 2255 motion prior to an answer if, as the Court finds here, "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. foll. § 2255 (2004); see Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir.2000).

[3] In Mirabal's formal moving papers, he also asserted that he is entitled to post-conviction relief due to the decriminalization of marijuana -- a claim he contends was previously unavailable to him -- citing to the so-called E.Q.U.A.L. Act. (See Cr. Dkt. No. 629 at 5-6.) Mirabal does not fully press this ground forward in his brief. Further, as the Government points out, Mirabal's reference to the E.Q.U.A.L. Act is erroneous. (See

counsel's performance was deficient by failing to make arguments or present evidence regarding Mirabal's previous arrests as "relevant conduct." Mirabal states that he "should have been credited previous time served on drug offenses which occurred in the mist [sic] of the conspiracy," underlying his federal plea. (See Habeas Motion at 5.)

Mirabal identifies five instances of conduct he contends his counsel, Andrew Patel ("Patel"), should have argued was relevant conduct warranting sentencing reduction: (1) a June 11, 2008 arrest for drug offenses for which Mirabal claims he spent approximately six months in custody; (2) an October 9, 2009 arrest for possessing a non-narcotic for which Mirabal asserts he spent 22 days in custody; (3) a December 1, 2011 arrest for possession of a controlled substance, criminal impersonation, and possession of marijuana for which Mirabal claims he served four years in custody; (4) a June 12, 2014 arrest for failing to appear as related to a 2009 shooting for which Mirabal says he spent two months and eleven days in custody; and (5) a May 29, 2015 sentence for aggravated assault resulting from the 2009 shooting for which Mirabal

---

Habeas Opposition at 11 n.1.) The E.Q.U.A.L. Act is not yet signed into law and is irrelevant here as it grapples with the elimination of sentencing disparities as between crack and powder cocaine. See H.R. 1693, 117th Cong. (2021). What Mirabal presumably intended to cite was the M.O.R.E. Act. See H.R. 3617, 117th Cong. (2022). But the M.O.R.E. Act also has not been signed into law, rendering Mirabal's claim meritless at this time.

served three years in custody. (See Habeas Motion at 2-3; see also Habeas Opposition at 11-12.) Mirabal asserts that these offenses are relevant conduct and, had the Court considered them as such, that he is entitled to an approximately seven-year credit for the time he asserts he was in custody prior to this Court's sentence. Ultimately, Mirabal argues that his counsel's failure to investigate and present the relevant conduct evidence and argument satisfies both the performance and prejudice prongs of Strickland v. United States, 466 U.S. 668 (1984).

Mirabal reiterates these points as to Patel's performance again in his Reply. But in doing so, he focuses on an apparent discord between Patel's arguments at sentencing and certain terms of Mirabal's plea agreement. Essentially, Mirabal asserts, in somewhat circular fashion, that because the plea agreement barred Patel from seeking a downward departure, any argument by Patel that a downward departure was appropriate is proof of Patel's deficient performance, because he was barred from making those arguments in the first place. (See generally Reply.)

Mirabal also makes three arguments in his Release Motion as to why he is entitled to compassionate release. First, Mirabal argues that he should be released to take care of his elderly mother who is "diagnosed with Asthma with [Chronic

Obstructive Pulmonary Disease ("COPD")]." (See Release Motion at 2.) Second, Mirabal has several underlying medical conditions (he asserts he is pre-diabetic, obese, and asthmatic) that he contends increase his risk of serious complications should he contract COVID-19 a second time while in custody. Mirabal also argues that the Bureau of Prisons ("BOP") has failed, and continues to fail, to take the COVID-19 pandemic seriously and is incapable of preventing him from contracting COVID-19 again and providing him the proper care if he does. Third, Mirabal argues that he has demonstrated rehabilitation. In all, Mirabal argues that he is entitled to release or a reduction of his sentence.

## II.  **LEGAL STANDARD**

The Court notes that Mirabal is a pro se litigant. As such, his submission must be held to "less stringent standards than formal pleadings drafted by lawyers." Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993) (internal citation omitted). The Court must construe Mirabal's submissions "liberally and interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted). Even so, pro se status "does not exempt a party from compliance with relevant rules of procedural and

substantive law." Boddie v. New York State Div. of Parole, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quotation omitted).

A.   INEFFECTIVE ASSISTANCE OF COUNSEL

"In order to establish an ineffective assistance claim, a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Cardoza v. Rock, 731 F.3d 169, 178 (2d Cir. 2013). With respect to the performance prong, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (internal quotation marks, brackets, and citations omitted). While courts should be deferential to defense counsel's strategic decisions, those decisions must be within "the wide range of reasonable professional assistance." Strickland v. United States, 466 U.S. 668, 689 (1984).

With respect to the prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cullen, 563 U.S. at 189 (internal quotation marks omitted). This standard "requires a

substantial, not just conceivable, likelihood of a different result." Id. (internal quotation marks omitted).

A petitioner's filing of a Section 2255 petition sometimes may require an evidentiary proceeding. A district court, however, may also summarily dismiss a petition if the petitioner fails to raise any "detailed and controverted issues of fact." Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977). The Court must "determine[] whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). But the court "need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." Id. In other words, if the court is persuaded that the petitioner has failed to establish a *prima facie* case for relief, it may summarily dismiss the petition.

    B.   SECTION 3582

Section 3582 allows a court to reduce a term of imprisonment after considering the factors set forth in 18 U.S.C. Section 3553(a)[4] and finding that "extraordinary and

---

[4] 18 U.S.C. Section 3553(a) provides that "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and directs the

compelling reasons warrant such a reduction." 18 U.S.C. §
3582(c)(1)(A)(i). However, a court may do so only upon motion
of the Director of the BOP or "upon motion of the defendant
after the defendant has fully exhausted all administrative
rights to appeal a failure of the [BOP] to bring a motion on
defendant's behalf or the lapse of 30 days from the receipt
of such a request by the warden of the defendant's facility,
whichever is earlier." Id.

After a defendant has exhausted all administrative
remedies and unsuccessfully sought a sentence reduction from
the BOP, the court must "consider the full slate of
extraordinary and compelling reasons that an imprisoned
person might bring before [the court] in motions for
compassionate release," and is not limited to considering
reasons articulated by the United States Sentencing
Commission in the Guidelines. United States v. Brooker, 976
F.3d 228, 237 (2d Cir. 2020); see also United States v.
Philibert, No. 15 Crim. 647, 2021 WL 3855894, at *3 (S.D.N.Y.
Aug. 27, 2021) (explaining that Brooker clarified the reach

---

court to "consider-- (1) the nature and circumstances of the offense and
the history and characteristics of the defendant; (2) the need for the
sentence imposed . . . the kinds of sentences available; (4) the kinds of
sentence and the sentencing range established . . . (5) any pertinent
policy statement . . . (6) the need to avoid unwarranted sentence
disparities among defendants with similar records who have been found
guilty of similar conduct; and (7) the need to provide restitution to any
victims of the offense."

of the Sentencing Commission's guidance defining
"extraordinary and compelling" reasons). However, even post-
Brooker, "[t]hough the Bureau of Prisons policy statements
and application notes are not binding, they can add insight"
on what constitutes extraordinary and compelling reasons. See
United States v. Lewis, No. 00 Crim. 1118, 2021 WL 3292180,
at *2 (S.D.N.Y. Aug. 2, 2021); United States v. Olivieri, No.
18 Crim. 316, 2021 WL 4120544, at *4 (S.D.N.Y. Sept. 9, 2021).
Section 3582 grants a district court "broad" discretion, and
under the statute, the court can "for instance, reduce but
not eliminate a defendant's prison sentence, or end the term
of imprisonment but impose a significant term of probation or
supervised release in its place." Phillibert, 2021 WL
3855894, at *3.

### III. DISCUSSION

A.   POST-CONVICTION RELIEF

The Court is not persuaded that Mirabal's counsel was
ineffective by failing to investigate and argue that
Mirabal's previous conduct and periods of incarceration were
"relevant conduct" warranting a reduction in his sentence.
Under the circumstances, Mirabal has failed to demonstrate
that his counsel's strategic decisions prejudiced him as
required for a successful claim of ineffective assistance of
counsel.

Mirabal argues that he is entitled to habeas relief due to ineffective assistance of counsel. Mirabal primarily argues that his counsel, Patel, failed to investigate Mirabal's prior arrests and periods of incarceration and argue that they were "relevant conduct" to the narcotics conspiracy that should be credited towards, and thus reduce, Mirabal's sentence. (Habeas Motion at 2-4.) Mirabal submits that this failure rendered Patel's performance ineffective causing Mirabal prejudice, stating that "there is evidence that was available if only counsel attempted to investigate and prepare for sentencing." (Id. at 3.)

Mirabal fails to establish that Patel's performance at sentencing was unreasonable or fell below "the wide range of reasonable professional assistance," allowed. Strickland, 466 U.S. at 689. Mirabal's argument is that Patel was ineffective by failing to seek a downward departure under Guidelines Section 5K2.23 ("Section 5K2.23"). Section 5K2.23 provides for a "downward departure" for certain undischarged terms of imprisonment at the time of sentencing. See U.S.S.G. § 5K2.23. Yet, the plea agreement that Mirabal entered specifically provided that "neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein." (Civ. Dkt. No. 14-1 at 3.) The plea agreement does not reference a downward departure under Section 5K2.23 from

12

the departures or adjustments counsel could seek. The Court therefore finds that it was well within the bounds of reasonable professional assistance for Patel to not focus on these arguments -- arguments the plea agreement specifically prohibits -- and instead to focus on other sentencing factors that were not so limited by the plea agreement. (See Civ. Dkt. No. 14-1 at 4 (outlining the rights of the parties to submit argument relevant to sentencing based on, among other things, "the factors to be considered in imposing a sentence pursuant to Title 18 [U.S.C.] Section 3553(a)" or new information relevant to criminal history).)

Patel made arguments regarding the 2009 shooting in his sentencing submission to the Court and during the hearing. (See Cr. Dkt. No. 564.) Mirabal previously served around four years in prison for that offense and seeks to have that time credited to his current sentence. Mirabal focuses on Patel's argument about the 2009 shooting in his Reply, tacking on another argument as to how Patel's performance was deficient. Mirabal adds that Patel was deficient by arguing that the 2009 shooting was "relevant conduct" but being unprepared to provide further evidence in the record as to the facts surrounding the shooting. Rather than dwelling on evidentiary point, Mirabal emphasizes that the fact that Patel made any arguments about "relevant conduct" at all proves Patel was

deficient because Patel was barred from making such arguments
under the plea agreement.

Mirabal argues both that Patel was deficient for not
arguing certain conduct was "relevant conduct" but also that
Patel was deficient for making arguments about "relevant
conduct." Mirabal cannot have it both ways. And, either way,
Mirabal's argument is misplaced. Although Patel was forbidden
from "in any way suggest[ing] that the Probation Office or
the Court consider such a departure or adjustment under the
Guidelines," Patel could make "any arguments regarding
whether the defendant should be sentenced to the Stipulated
Guidelines Sentence (or where the defendant should be
sentenced within such other range as the Court may determine)
and regarding the factors to be considered in imposing a
sentence pursuant to Title 18, United States Code, Section
3553(a)." (Civ. Dkt. No. 14-1 at 4.)

The latter is what Patel did and he chose his words
carefully. In making his argument, Patel did not ask for a
"downward departure." Rather he requested that the Court
"grant *a variance* under the principles set out in Guideline
Section 5K2.23." (See Cr. Dkt. No. 564 at 2-3 (emphasis
added).) The distinction is critical. A "departure . . .
refers only to non-Guidelines sentences imposed on the basis
of factors within the framework set out in the Guidelines,

whereas a variance is a modification of the applicable Guidelines sentence that a District Court may find justified under . . . sentencing factors extrinsic to the Guideline -- namely, those set forth in 18 U.S.C. § 3553(a)." United States v. Sealed Defendant One, 49 F.4th 690, 697 (2d Cir. 2022) (internal citation and quotation marks omitted). Far from being deficient, Patel crafted his arguments with precision. By invoking a variance under Section 3553(a), Patel was able to permissibly advocate on Mirabal's behalf while avoiding the plea agreement's prohibitions on seeking departures.

And to the extent that Patel did not provide a detailed record of the 2009 shooting when asked, focusing on Mirabal's past criminal conduct could have had the opposite effect that Mirabal desires. As the Government points out, "digging further into the details of such a brazen act of violence [occurring in 2009] conceivably could have prejudiced the defendant by extracting more gruesome details undermining the defense's arguments in favor of leniency at sentencing." (Habeas Opposition at 21.) The Court agrees.

Under Section 3553(a), the Court may consider the "history and characteristics of the defendant" in imposing the sentence. 18 U.S.C. § 3553(a)(1). Rather than focusing on the history that Mirabal identifies -- one that the Court

accounted for and was critical of in imposing its sentence (see "Transcript," Cr. Dkt. No. 579 at 24:21-25:7) -- Patel chose to focus on Mirabal's rehabilitative characteristics and personal development since the 2005 murder. The Court is not persuaded that Patel's strategic decision to focus on these arguments constitutes ineffective assistance of counsel especially because focusing on Mirabal's other criminal conduct could have been to his detriment. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"); cf. Jiang v. Mukasey, 522 F.3d 266, 270-71 (2d Cir. 2008) (concluding that an "attorney's decision, even if unwise in hindsight, was a tactical decision that [would] not constitute ineffective assistance").

There is also insufficient evidence to establish that any of the conduct Mirabal identified is relevant conduct applicable under Section 5K2.23. Mirabal fails to provide evidence or more than conclusory argument to establish that the 2009 shooting was done in furtherance of the Government's charged narcotics conspiracy. Nor does Mirabal make more than a bald assertion that the other drug charges noted above are related to the conspiracy other than that they involved drugs. And Mirabal also does not explain how the domestic violence

charges were related conduct. Even construing Mirabal's motion broadly, Mirabal has not established the necessary factual predicate to show that Patel's performance was deficient by not further investigating those claims. See United States v. Pinhasov, 762 F. App'x 43, 46 (2d Cir. 2019) ("The duty to investigate does not 'compel defense counsel to investigate comprehensively every lead or possible defense.'" (quoting Greiner v. Wells, 417 F.3d 305, 321 (2d Cir. 2005))).

Finally, Mirabal does not establish that he was prejudiced by his counsel's decision. Whether a departure is warranted under Section 5K2.23 is discretionary, even where the relationship between the conduct is established. See United States v. Boodie, 590 F. App'x 67, 67-68 (2d Cir. 2015) ("Section 5K2.23 provides that a 'downward departure *may* be appropriate' for a discharged term if § 5G1.3(b) '*would have* provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense' []. Thus, under the plain language of § 5K2.23, a downward departure for a discharged term is discretionary even where an adjustment would have been required for an undischarged term."). The discretionary nature of granting such a departure means that any likelihood of prejudice was at most merely "conceivable," not "substantial," Cullen, 563 U.S. at 189, and so Mirabal has

not met the "heavy burden" of showing "actual prejudice," even under the more lenient pro se standard. Strickland, 466 U.S. at 692.

And as the Court made clear at sentencing, the very conduct Mirabal asserts warrants a reduction of his sentence was, in fact, an aggravating factor justifying the length of the sentence the Court imposed. The Court explained that it imposed the 300-month sentence, in part, because Mirabal's "conduct did not cease in 2005" including that Mirabal "was involved in another shootout" in 2009 and that "Mirabal's conduct in unlawful drug trade did not end in 2005; it continued much after that, up to practically the point at which he was arrested in connection with this case." (Transcript at 24:21-25:7.) Even if Patel had successfully established that each of the crimes identified by Mirabal was relevant conduct, it was well within the Court's discretion to impose the 300-month sentence that it ordered. Accordingly, Mirabal fails to establish both that Patel's performance was deficient and that he was prejudiced. As Mirabal fails to establish a *prima facie* case of ineffective assistance of counsel, the Court summarily denies Mirabal's petition.

B.   <u>COMPASSIONATE RELEASE</u>

1.   <u>Exhaustion of Remedies</u>

Section 3582 empowers this Court to hear compassionate release motions only after a defendant fully exhausts all administrative appellate rights or after thirty days have passed since the warden received defendants' application and failed to take action. Mirabal applied for compassionate release to the Warden of United States Prison Coleman I on or about March 27, 2022. (<u>See</u> Release Opposition at 3.) Mirabal's application was timely denied on or about April 4, 2022. (<u>See</u> <u>id.</u>)

Although the Government does not dispute that Mirabal has exhausted his administrative remedies, the Court notes that the record does not clearly indicate he has done so. Along with his Release Motion, Mirabal attaches the warden's response denying Mirabal's request for a reduction in sentence. (Release Motion at 12.) That response notes that Mirabal could "commence an appeal of th[e Warden's] decision via the administrative remedy process by submitting [his] concerns on the appropriate form (BP-9) within 20 days of the receipt of this response." (<u>Id.</u>) Neither Mirabal nor the Government indicate whether Mirabal timely appealed, so the Court cannot say with certainty that Mirabal had "*fully* exhausted all administrative rights," or if he waived them by

failing to timely exercise his right to administratively appeal. 18 U.S.C. § 3582(c)(1)(A) (emphasis added). Nevertheless, because the Court finds that Mirabal's other arguments lack merit, the Court assumes, but does not decide, that Mirabal exhausted his administrative remedies and decides the motion on the other grounds that follow.

## 2.   Extraordinary And Compelling Reasons

The Court must evaluate whether extraordinary and compelling reasons justify compassionate release or sentence reduction and whether the Section 3553(a) factors weigh in favor of release. See United States v. Pellot, No. 19 Crim. 169, 2021 WL 807242, at *1 (S.D.N.Y. Mar. 3, 2021). Mirabal raises three arguments here. First, Mirabal argues that he should be released to allow him to care for his elderly mother. Second, he asserts that the risk of contracting COVID-19 in prison, exacerbated by his medical conditions, justify his release. Third, he submits that he is rehabilitated. None of these arguments is sufficient to satisfy the high bar constituting "extraordinary and compelling" reasons justifying release or sentence reduction.

### a)   Family Circumstances

Mirabal's argument regarding the need to care for his mother is not a family circumstance justifying release or sentencing reduction. Although the Court is not bound by them,

20

the Guidelines Section 1B1.13 Application Notes provide guidance as to which "Family Circumstances" may constitute extraordinary and compelling reasons. Those circumstances include, "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children[,] [and] (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, n.1(C). Of course, caring for one's elderly or sick mother is not among the circumstances identified in the Guidelines. However, from the Guidelines' considerations, the Court derives a general rule for what may constitute an extraordinary and compelling reason as it relates to caring for family members, which is that the family member must be wholly dependent on the defendant (and only the defendant) for care. See United States v. Lindsey, No. 13 Crim. 271, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021). In other words, the family member must be in such "dire conditions," due to age or illness, that they cannot care for themselves and only the defendant is available to provide the requisite care. See id. (finding that "before concluding that an extraordinary and compelling reason has been established," the defendant must show that the defendant is the only available caregiver for a "family member in dire conditions.").

Mirabal does not persuade the Court that his family circumstances constitute extraordinary and compelling reasons. Although Mirabal states that "his mother needs him . . . with her as her condition deteriorates," he does not state that the reason is that she has no other caregiver. (Release Motion at 3.) Instead, Mirabal justifies his request based on his want to "be able to show her that in fact she did raise her child right," and to "be able to show her finally that he can function in an upstanding society and make a difference." (Id. at 4-5.) And while Mirabal does state that his mother "has no one else to lean on," this falls short of proving that his mother is dependent upon only Mirabal for her care. (Id. at 5.)

Mirabal's argument that his mother's condition is dire is also unpersuasive. While Mirabal states that his mother's breathing is "strained," the medical records he provided, which are now over four years old, indicate that her asthma is "mild persistent, uncomplicated." (Compare id. at 6, with id. at 10.) And although the Court takes notice[5] that patients

---

[5] The Court may take judicial notice of a "fact that is not subject to reasonable dispute because it: . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). Courts in this District regularly take judicial notice of facts from reputable medical sources. See United States v. Williams-Bethea, 464 F. Supp. 3d 562, 569 (2020) (assessing medical studies); Basank v. Decker, 449 F. Supp. 3d 205, 211 (S.D.N.Y. Mar. 26, 2020) (taking judicial notice of information from the CDC).

diagnosed with Asthma and COPD may have worse outcomes,[6] the medical report conveys only a non-specific "hope[]" that Mirabal would be released "so he can care for her," and not that Mirabal's mother's livelihood depends on Mirabal being able to care for her. Without more, Mirabal fails to establish his mother's care as an extraordinary and compelling reason justifying early release or sentence reduction.

        b)    COVID-19

Mirabal next argues that his motion should be granted because as a pre-diabetic person who is also obese and asthmatic, he is at a greater risk of complication should he contract the COVID-19 virus. (See Release Motion at 6-7.) The Court finds that the record establishes that Mirabal suffers from these conditions, each of which may increase the risk of serious complications from COVID-19. Yet, Mirabal's records show that he has already tested positive for COVID-19 in August 2021, and, despite his comorbidities, remained asymptomatic and did not suffer any significant adverse health effects. (See Release Motion, Exh. A at 1-8.) Further, after Mirabal first contracted COVID-19 in August 2021, Mirabal then received two doses of the COVID-19 vaccine, which

---

[6] See Samuel Louie et al., The Asthma-Chronic Obstructive Pulmonary Disease Overlap Syndrome: Pharmacotherapeutic Considerations, 6 EXPERT R. CLINICAL PHARMACOLOGY 197 (Feb. 2020) (explaining that "COPD is a deadlier disease than asthma").

mitigates his risk of becoming seriously ill should he contract the disease again. (See id. at 158.) Courts in this District have been consistent in explaining that "the risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated." United States v. Jones, No. 17 Crim. 214, 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021); see also United States v. Delgado, No. 19 Crim. 732, 2022 WL 252064 (S.D.N.Y. Jan. 27, 2022); United States v. Nieves, No. 12 Crim. 931, 2021 WL 3494820, at *2 (S.D.N.Y. Aug. 8, 2021) (finding "the circumstances of the pandemic weigh less heavily on the balance of [Section] 3553(a) factors for inmates who have recovered from or been vaccinated against COVID-19 and are thus less likely to be infected again in the future"); United States v. Steele, No. 15 Crim. 836 (VM), 2022 WL 2437904, at *2 (S.D.N.Y. Jul. 5, 2022). Notwithstanding BOP's policies, Mirabal's COVID-19 argument fails to establish that he is entitled to relief.

c)   Rehabilitation

Finally, Mirabal argues that post-sentencing, he has "demonstrated rehabilitation, programmed, maintained employment and has very limited misconduct," amounting to, apparently, an extraordinary and compelling reason justifying

compassionate release. However, Congress has expressly instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). So, while the Court commends Mirabal's rehabilitative efforts, employment record, and other good behavior, these efforts do not rise to the level of "extraordinary and compelling." See, e.g., United States v. Saleh, No. 93 Crim. 181, 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) (recognizing a defendant's commendable institutional record but denying release).

The Court's conclusion here is bolstered by the Section 3553(a) factors it considered at sentencing and the graveness of Mirabal's conduct. The Court considered all statutory factors when sentencing Mirabal and explained its reasoning for imposing the 25-year sentence on the record at Mirabal's hearing.

The sentence imposed was sufficient but not greater than necessary to comply with the purposes of sentencing. The sentence reflected the seriousness of Mirabal's crime; his acceptance of responsibility for the 2005 shooting during which Mirabal murdered Diaz, an innocent bystander, and injured two others. The sentence also reflected Mirabal's continued engagement in criminal conduct after the 2005 murder, including a separate shooting in 2009 and trafficking

narcotics up until he was arrested in connection with this case in 2017. None of Mirabal's arguments demonstrate an extraordinary or compelling reason to revisit the Court's conclusions regarding the sentence imposed.

### IV.   <u>ORDER</u>

For the foregoing reasons it is hereby

**ORDERED** that the pro se petition of Joshua Mirabal ("Mirabal") for post-conviction relief (Civ. Dkt. No. 7; Cr. Dkt. No. 629) pursuant to 18 U.S.C. Section 2255 is **DENIED;** and it is further

**ORDERED** that the pro se motion of Mirabal for compassionate release (Cr. Dkt. No. 651) pursuant to 18 U.S.C. Section 3582(c)(1)(A) is **DENIED.**

The Clerk is directed to terminate all pending motions.

**SO ORDERED.**

Dated:    8 March 2023
          New York, New York

_____
          Victor Marrero
          U.S.D.J.